**23RD JUDICIAL DISTRICT COURT FOR THE PARISH OF ASCENSION**

**STATE OF LOUISIANA**

DOCKET NO. _124431_

DIANE COCO, JEFFERY ANDERSON, KEVA ANDERSON, REGINALD ANDERSON, TASMINE ANDERSON, GARY BANKS, ROBIN BELL, JESSICA BOLDEN, LINETTE CANN, TOMMY CANN, ELNORA CHRISTY, JENNIFER CHRISTY, JESSICA FAVORITE, I. DAVID FOREMAN, JR., ERIC FOREMAN, GEORGE FOREMAN, KIMBERLY FOREMAN, GLENDA GAINES, PAGE GAINES, DEMETRIA IRVIN, JOHNNY IRVIN, DIANE JACKSON, AQUILLA JOHNSON, CALVIN JOHNSON, CEDRICK JOHNSON, DORCAS JOHNSON, GEORGIA JOHNSON, JONATHAN JOHNSON, JOY D. JOHNSON, KALESIA JOHNSON, KRISHONDRIA JOHNSON, LASHONDRIA JOHNSON, LAWAUNA JOHNSON, TREVONE JOHNSON, WILSHEKA JOHNSON, JOANN JOHNSON-LEBLAMC, JOSEPHINE JONES, KEITH JORDAN, LEROY KELLY, JERIMAH LEWIS, ETHEL MILES, JOSEPH MILES, OKERDA MITCHELL, MAUD MOSES, TERRELL MOSES, JOHNNY NOBLE, MARGIE NOBLE, KAMARIA REED, TANYE RICKS, VENICE RICKS, CHRISTOPHER SARTINL, GREIGILAR SCOTT, LACOTY SCOTT, LOLITHA SCOTT, TARNESHRIA SCOTT, JAMAICA SHERMAN, BETTY STEPHENS, BRANDON STEPHENS, JOANN STEPHENS, KEANDRA STEPHENS, MARSHALL STEPHENS, YOLANDA STEPHENS, AQUILLA TALBERT, ADAM THOMPSON, ARTILLA THOMPSON, BURNIE WASHINGTON, JOSIE WEST, JOESPH WEST, JR., DEMETRESE WHITES, CORDARO WILLIAMS, HUBERT WILLIAMS, HUBERT WILLIAMS, JR., HUBERT WILLIAMS, III, JAJUAN WILLIAMS, LESLIE WILLIAMS, QUINCY WILLIAMS, TRAMAINE WILLIAMS, AND WANDA WILLIAMS

**DIVISION B**

**VERSUS**

HEXION, INC., LANXESS SOLUTIONS US, INC., SEMS, INC., JESCO ENVIRONMENTAL & GEOTECHNICAL SERVICES, INC., LEAAF ENVIRONMENTAL, LLC, STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF ENVIRONMENTAL QUALITY, AND ASCENSION PARISH GOVERNING AUTHORITY

FILED: _____     _____

                                    **DEPUTY CLERK OF COURT**

**PETITION FOR DAMAGES**

Plaintiffs, Diane Coco, Jeffery Anderson, Keva Anderson, Reginald Anderson, Tasmine Anderson, Gary Banks, Robin Bell, Jessica Bolden, Linette Cann, Tommy Cann, Elnora Christy, Jennifer Christy, Jessica Favorite, I. David Foreman, Jr., Eric Foreman, George Foreman, Kimberly Foreman, Glenda Gaines, Page Gaines, Demetria Irvin, Johnny Irvin, Diane Jackson, Aquilla Johnson, Calvin Johnson, Cedrick Johnson, Dorcas Johnson, Georgia Johnson, Jonathan Johnson, Joy D. Johnson, Kalesia Johnson, Krishondria Johnson, LaShondria Johnson, Lawauna Johnson, Trevone Johnson, Wilsheka Johnson, Joann Johnson-Leblamc, Josephine Jones, Keith Jordan, Leroy Kelly, Jerimah Lewis, Ethel Miles, Joseph Miles, Okerda Mitchell, Maud Moses,

Exhibit A, "In-Globo"

Terrell Moses, Johnny Noble, Margie Noble, Kamaria Reed, Tanye Ricks, Venice Ricks, Christopher Sartinl, Greigilar Scott, LaCoty Scott, Lolitha Scott, Tarneshria Scott, Jamaica Sherman, Betty Stephens, Brandon Stephens, Joann Stephens, Keandra Stephens, Marshall Stephens, Yolanda Stephens, Aquilla Talbert, Adam Thompson, Artilla Thompson, Burnie Washington, Josie West, Joesph West, Jr., Demetrese Whites, Cordaro Williams, Hubert Williams, Hubert Williams, Jr., Hubert Williams, III, Jajuan Williams, Leslie Williams, Quincy Williams, Tramaine Williams, and Wanda Williams respectfully petition this Honorable Court for a judgment finding Defendants herein liable for damages caused by Defendants' activities that substantially harmed Plaintiffs, Plaintiffs' land, and Plaintiffs' legal interests. Upon information and belief, Plaintiffs make the following allegations:

1.

The following parties are made Plaintiffs herein:[1]

(A)    **Diane Coco**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(B)    **Jeffery Anderson**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(C)    **Keva Anderson**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(D)    **Reginald Anderson**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(E)    **Tasmine Anderson**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(F)    **Gary Banks**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(G)    **Robin Bell**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(H)    **Jessica Bolden**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(I)    **Linette Cann**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(J)    **Tommy Cann**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

---

[1] Hereinafter "Diane Coco, *et al.*" or "Plaintiffs."

(K)     **Elnora Christy**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(L)     **Jennifer Christy**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(M)     **Jessica Favorite**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(N)     **I. David Foreman, Jr.,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(O)     **Eric Foreman**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(P)     **George Foreman**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(Q)     **Kimberly Foreman**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(R)     **Glenda Gaines**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(S)     **Page Gaines**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(T)     **Demetria S. Irvin**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(U)     **Johnny Irvin**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(V)     **Diane Jackson**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(W)     **Aquilla Johnson**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(X)     **Calvin Johnson**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(Y)     **Cedrick Johnson**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(Z)     **Dorcas Johnson**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(AA)    **Georgia Johnson**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(BB)    **Jonathan Johnson**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(CC)    **Joy D. Johnson**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(DD)    **Kalesia Johnson,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(EE)    **Krishondria Johnson,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(FF)    **LaShondria Johnson,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(GG)    **Lauwana Johnson,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(HH)    **Trevone Johnson,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(II)    **Wilsheka Johnson,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(JJ)    **JoAnn Johnson-Leblanc,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(KK)    **Josephine Jones,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(LL)    **Keith Jordan,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(MM)    **Leroy Kelly,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(NN)    **Jerimah Lewis,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(OO)    **Ethel Miles,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(PP)    **Joseph Miles,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(QQ)    **Okerda Mitchell,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(RR)    **Maud Moses,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(SS)    **Terrell Moses,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(TT)    **Johnny Noble,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(UU)    **Margie Noble,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(VV)    **Kamaria Reed,** an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(WW)     **Tanye Ricks**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(XX)     **Venice Ricks**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(YY)     **Christopher Sartinl**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(ZZ)     **Greigilar Scott**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(AAA)    **LaCoty Scott**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana; and

(BBB)    **Lolitha Scott**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(CCC)    **Tarneshria Scott**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(DDD)    **Jamaica Sherman**, an individual of legal age and domiciled in the County of Dallas, State of Texas;

(EEE)    **Betty Stephens**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(FFF)    **Brandon Stephens**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(GGG)    **Joann Stephens**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(HHH)    **Keadra Stephens**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(III)    **Marshall Stephens**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(JJJ)    **Yolanda Stephens**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(KKK)    **Aquilla Talbert**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(LLL)    **Adam Thompson**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(MMM)    **Artilla Thompson**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(NNN)    **Burnie Washington**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(OOO)    **Josie West**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(PPP)    **Joseph West, Jr.**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(QQQ)    **Demetrese Whites**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(RRR)    **Cordaro Williams**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(SSS)    **Hubert Williams**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(TTT)    **Hubert Williams, Jr.**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(UUU)    **Hubert Williams, III**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(VVV)    **Jajuan Williams**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(WWW)    **Leslie Williams**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(XXX)    **Quincy Williams**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana;

(YYY)    **Tramaine Williams**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana; and

(ZZZ)    **Wanda Williams**, an individual of legal age and domiciled in the Parish of Ascension, State of Louisiana.

2.

Plaintiffs, Diane Coco, *et al.*, own and/or use property located in Section 31, Township 8 South, Range 3 East, Ascension Parish, Louisiana, all in Tiger Heights Subdivision and on or adjacent to Tiger Heights Road, the location of the dump site, and Lee Stevens Lane, an adjacent street. The property has been contaminated or otherwise damaged by Defendants' acts and/or omissions. It is the intent of the Plaintiffs herein to claim damages for any and all of the property that they own or may own in Section 31, Township 8 South, Range 3 East, regardless of whether said property is specifically described in this petition (collectively, the "**Property**").

3.

The following parties are made Defendants herein:[2]

A. **HEXION, INC.**, as successor by merger, acquisition, and/or name change to **BORDEN CHEMICAL COMPANY**, a foreign business corporation, authorized to do and doing business in the State of Louisiana, having its Louisiana principal business establishment at 501 Louisiana Avenue, Baton Rouge, LA, 70802, and whose registered agent for service of process is Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, LA, 70802;

B. **LANXESS SOLUTIONS US, INC.**, as successor by merger, acquisition, and/or name change to **UNIROYAL CHEMICAL COMPANY, INC.** and **MONOCHEM, INC.**, a foreign business corporation, authorized to do and doing business in the State of Louisiana, having its Louisiana principal business establishment at 501 Louisiana Avenue, Baton Rouge, LA, 70802, and whose registered agent for service of process is Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, LA, 70802;

C. **SEMS, INC.**, a domestic corporation, domiciled in the Parish of East Baton Rouge, State of Louisiana, whose registered agent for service of process is Stephen E. Broyles, 701 North Street, Baton Rouge, LA, 70802;

D. **JESCO ENVIRONMENTAL & GEOTECHNICAL SERVICES, INC.**, a domestic corporation, domiciled in the Parish of Jefferson Davis, State of Louisiana, whose registered agent for service of process is Alvinette Teal, 1701 South Thibodeaux Road, Jennings, LA, 70546;

E. **LEAAF ENVIRONMENTAL, LLC**, a domestic limited liability company, domiciled in the Parish of Jefferson, State of Louisiana, whose registered agent for service of process is Jesse Hoppes, 3357 State Street Drive, New Orleans, LA, 70125;

F. **STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF ENVIRONMENTAL QUALITY**, a sovereign entity that has consented to be sued in Louisiana state court pursuant to the provisions of La. Rev. Stat. 13:5106, whose agent for service of process is the Attorney General for the State of Louisiana, the Honorable Jeff Landry; and

G. **PARISH OF ASCENSION**, a political subdivision of the State of Louisiana operating under a Home Rule Charter, whose agent for service of process is the Parish President for the Parish of Ascension, Clint Cointment, 615 East Worthy Street, Gonzales, LA, 70737.

4.

The Constitution of the State of Louisiana provides that: "The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy." Thus, the Louisiana Constitution imposes a duty of environmental protection, and the Louisiana

---

[2] Hereinafter collectively referred to as "the Defendants."

legislature established the Department of Environmental Quality[3] to fulfill this important state interest.

5.

In furtherance of this constitutional duty to preserve the natural resources of the State, the legislature subsequently enacted what has come to be known as the Groundwater Act.[4] Since at least the 1960s, and probably before that time, the Defendants engaged in a series of activities resulting in the contamination of the groundwater and soils underlying the lands of Plaintiffs. These activities were conducted in a wanton and reckless manner, in total disregard of the public safety and health.

6.

By passing the Groundwater Act, the legislature empowered private citizens such as the petitioners to enforce the public trust doctrine as it relates to useable groundwater. Groundwater is a public thing, and any damages awarded to restore usable groundwater must be deemed a public thing. The Defendants are alleged to have caused and/or contributed to the release and/or migration of hazardous substances that have contaminated, or threaten to contaminate, usable groundwater, and the petitioners are entitled to the costs necessary to restore said usable groundwater and to prevent any threat to usable groundwater. Further, petitioners are entitled to all damages necessary to evaluate and remediate the contamination of usable groundwater caused and/or contributed to by the Defendants.

7.

Petitioners show that this action contains a judicial demand which includes a claim to recover damages for the evaluation and remediation of contamination or pollution alleged to impact or threaten to impact usable groundwater, thus invoking the provisions of the Groundwater Act.

---

[3] Hereinafter referred to as the "LDEQ."
[4] La. Rev. Stat. 30:2015.1, Act 1166 (2003).

8.

Upon information and belief, the Property was formerly used as an illegal hazardous waste disposal site. The Property is believed to be contaminated as a result of this use of the Property. Defendants either caused this contamination, or are otherwise legally responsible for this contamination. Hazardous waste was dumped at the site repeatedly from approximately 1960-1980, at which time many drums were hauled away while others were buried. Livestock pastured in an area shared and/or immediately adjacent to the dump site died in the late 1970s as a result of their proximity to the dump site.

9.

In September 1984, a school bus turn-around was constructed on Tiger Heights Road, at roughly the same location as the dump site in Plaintiffs' subdivision, with an insufficient foundation that required maintenance in February 1985. The crew for the then-existing Ascension Parish Police Jury[5] used scrap and trash to "strengthen" the turnaround foundation.

10.

In February 1985, the Police Jury maintenance crew discovered numerous drums, trash, scraps, and other debris during excavation of structurally unsound soft spots at the school bus turn-around and former illegal dump site adjacent to plaintiffs' properties. An Ascension Parish employee on the scene, Glen Williams, observed a "chemical like" residue seeping out of the ground and strong noxious odors during excavation activities performed on the area.

11.

An LDEQ Hazardous Waste team conducted field investigation activities on February 13, 1985, at which time Glen Williams informed LDEQ personnel that five to six leaking and abandoned drums of unknown substances were buried approximately nine months before, per his instructions. The excavation of drums and trash from the same pit suggested co-burial of materials by the Police Jury crew and the chemical companies responsible for dumping hazardous waste at the site. LDEQ personnel observed a brownish liquid residue on the ground, odors, the empty pit which previously contained the drums and other debris, and the remains of several empty, rusted,

---

[5] Hereinafter "Police Jury."

and crushed drums as well as trash. LDEQ personnel sampled the unidentified liquid material on February 13, 1985, and the site was marked with hazardous site identification tape, and a two-foot-tall earthen berm was constructed around the area by the Police Jury operators per LDEQ's request.

12.

Based upon information and belief, several local sources are responsible for the illegal disposal of hazardous waste, including without limitation Borden Chemical Company, Uniroyal Chemical Company, Inc., and Mono-Chem, Inc.

13.

LDEQ collected surface and/or subsurface groundwater samples, which detected the following pollutants, including: Vinyl Chloride; 1,1 Dichloroethene; 1,1 Dichloroethane; 1-1, 2-Dichloroethane; Chloroform; 1,2-Dichloroethane (EDC); 1,1,1-Trichloroethane; Trichloroethene; 1,1,2-Trichloroethane; 1,1,2,2-Tetrachloroethane; and Chlorobenzene. The following non-priority pollutants were also detected: 2-Propanone; 2-Chloro-1,3-Butadiene; 2,3-Dichlorobutane; 1,1 Dichlorobutane; 1,2,3,4-Tetrachlorobutane; 1,1,2-Trichloropropane; 1,4-Dichloro-1 Butene; 1,2-Dichlorocyclobutane; 1,1-Dichlorocyclobutane; 1,3-Dichlorobutane; and a substantial quantity of 1,1,1,2-Tetrachloroethene.

14.

Upon information and belief, by March 12, 1985, following a request by LDEQ, the Police Jury covered the site with plastic to prevent contamination of surface runoff water and erected a fence around the area. By May 12, 1985, following another LDEQ request, and in an effort to restrict site access and reduce the risk of contamination of surface runoff water and subsequent contaminant migration, the Police Jury filled the pit with limestone gravel, leveled piles of soil and debris, strengthened containment dikes, covered the entire area with a thick plastic tarp, and erected a six foot tall fence with hazardous waste site warning tape.

15.

The LDEQ Hazardous Waste Site Cleanup Fund Prioritization System designated the Tiger Heights site as a long-term threat to human health or the environment, or RECAP Group 3, and assigned a ranking value of 70 to the site. It noted groundwater contamination of an estimated 150,000 to 300,000 gallons containing 10.8 mg/L 1, 1-dichloroethane, 9.7 mg/L 1,2-

dichloroethane; 7.3mg/L 1,1-dichloroethene; 3.6 mg/L 1,1,1,2 tetrachloroethane; 22.3 mg/L 1,1,2 trichloroethane; 2.4 mg/L trichloroethene; 4.3 mg/L vinyl chloride.

16.

The migration of contamination from the Site onto Plaintiffs' property was caused by the negligence and strict liability of the Defendants in the following described particulars:

A. Defendants stored, or caused to be stored, buried or leaking hazardous waste on the Property without secondary containment;

B. The Defendants did not timely and/or adequately notify Plaintiffs of such storage; and

C. The prolonged storage of this hazardous waste without secondary containment caused the Property to become contaminated.

17.

Plaintiffs assert in this petition only those private causes of action accorded to it under the Louisiana Constitution and laws of the State of Louisiana. Plaintiffs have not pled, and will never at any time in the future plead, any claim or cause of action arising under federal law, and assert no such claims herein. Plaintiffs likewise have not pled, and will never at any time in the future plead, any claim or cause of action raising a "substantial federal question," and assert no such claims herein. To the extent any state law claims are preempted by federal law, such claims are not alleged herein. Plaintiffs herein expressly do not pursue any Defendants or claims that have been discharged in bankruptcy, and if a party or parties has or intends to file for bankruptcy concerning any of the claims alleged herein, it is the express intention of Plaintiffs not to pursue those claims or party or parties in this action, even if such party or parties have been inadvertently named as a defendant above. To the extent permissible under state law, Plaintiffs' claims seek restoration of their property and the property surrounding the site to pre-contamination conditions.

18.

The LDEQ, acting through its officials and employees, concealed the soil and groundwater contamination from the petitioners for decades. The damages sustained by the petitioners were caused by the negligence and misconduct of the defendant, State of Louisiana, through the Department of Environmental Quality, in the following non-exclusive respects:

A) Failure to properly and timely report to the petitioners the sample test results showing the elevated levels of contaminants;

B) Failure to timely warn the petitioners of the contamination of the groundwater and soils underlying their respective properties;

C) Failure to timely conduct follow-up testing of the groundwater and soils;

D) Failure to timely require remediation of the contaminated soil and groundwater;

E) Negligent failure to have an appropriate system of tests performed on the groundwater;

F) Failure to exercise quality control over the collection and analyses of groundwater and soils;

G) Failure to properly and timely investigate the cause and/or causes resulting in the direction(s) of groundwater flow;

H) Failure to properly and timely investigate the source of the contamination, which has yet to be correctly and/or accurately determined;

I) Failure to properly and timely investigate the history of the Tiger Heights property;

J) Failure to properly and timely interview former employees of the chemical companies suspected of polluting the Site;

K) Failure to timely, properly, and/or adequately assess the most feasible plan for remediation of the contaminants in soils and groundwater; and

L) Other negligent acts and misconduct which will be proven at the trial of this matter.

19.

The LDEQ is charged, both statutorily and constitutionally, with the responsibility to be an active advocate for the public safety and health. In this case, the LDEQ failed to perform what must be the most basic act – to tell people when they are in danger due to environmental contamination. The pollution damage suffered and to be suffered by the petitioners in this matter would have been substantially lessened by a timely warning that would have enabled the petitioners to take action sooner with regard to the remediation of their respective properties. The legislature has not limited the circumstances giving rise to the liability of the LDEQ.

20.

Persons and/or entities are liable for acts of commission and/or omission that cause damage to another under Civil Code Articles 2315 and 2316 if a duty imposed by the relationship of the parties is breached by such act or omission. Modern law imposes a duty to speak whenever equity, justice, and fair dealing demand it. Private parties have an obligation to warn of dangerous conditions when failing to do so would violate a standard requiring conformity to what the ordinary ethical person would have disclosed. The abrogation of sovereign immunity in the constitution

means that the State and private litigants have the same duties. Thus, under our law, LDEQ had a duty to tell the petitioners about the contaminants on their respective properties and in the groundwater, and the LDEQ failed to do so in a timely manner.

21.

Defendants knew or should have known that their repeated dumping of hazardous waste at the site and subsequent inaction in remediating any of that hazardous waste would cause the soil, surface waters, and groundwater of petitioners' properties to become contaminated. Defendants knew for many years that they were disposing, storing, discharging, or otherwise releasing toxic poisons and pollutants onto and into the ground, groundwaters, and surface waters near petitioners' properties. Yet, Defendants failed to inform or warn petitioners concerning the extent, nature, cause, and origin of this pollution. Rather than preventing these substances from migrating offsite using secondary containment, defendants chose to conceal and cover up their contamination. This concealment and cover up was routine practice, and LDEQ was complicit in its continuation to this day. The defendants' failure to responsibly and timely remove and/or remediate this toxic pollution in the soils and groundwater on and around the site and of the petitioners' respective properties has allowed the pollution to migrate and spread. Contamination from the site has now permanently damaged the drinking water and other aquifers underlying the petitioners' respective properties.

22.

Despite being aware of the contamination at the site for decades, LDEQ did not timely or adequately inform Plaintiffs of the extent of or dangers associated with the contamination. Given the nature of the contaminants at issue, LDEQ's acts and/or omissions, and defendants' unlawful conduct, have caused successive damages and cumulatively increasing deterioration of petitioners' properties. The defendants' pollution has migrated and will continue to migrate in the future. Despite the fact that the pollution of any state waters beneath and/or adjacent to any site to or from which hazardous waste has been treated, stored, and/or disposed, intentionally or accidentally, *shall* be presumed to be evidence of pollution from such site,[6] and despite having knowledge of

---

[6] Louisiana Revised Statute 30:2203(B) (emphasis added).

the contamination on and/or emanating from the site for decades, upon information and belief, those results have not been made publicly available to petitioners, who live in and/or use property in the Tiger Heights subdivision.

23.

This action arises under the provisions of the Groundwater Act, La. R.S. 30:2015.1. Plaintiffs affirmatively allege that the contamination at issue poses a threat to usable groundwater. Plaintiffs further allege that the Groundwater Act accords to them the right of action to clean up the entire plume of contamination at issue, regardless of whether portions of that plume do not underlie their property. Further, petitioners have a right and cause of action under applicable law to claim damages or other appropriate relief for the clean up of contamination on adjacent property or other non-owned property to the extent that such a clean up is required to accomplish the remediation of the petitioners' respective properties sought in this petition. Louisiana private law accords to a petitioner landowner the right to seek remediation damages for the remediation of the property of a neighbor if the petitioner landowner's property cannot effectively be remediated without remediating his neighbor's property. Petitioners' respective properties cannot be effectively remediated unless the source of the contamination of petitioners' respective properties is removed, and petitioners are entitled to removal of the source of contamination even if such source happens to be located on the property of another.

24.

Defendants' conduct as described herein constitutes negligence, which gives rise to liability under the provisions of La. Civ. Code art. 2315. Defendants knew or should have known that their conduct would cause property and other damages to Plaintiffs. Defendants had a duty to protect Plaintiffs and Plaintiffs' property from the effects of the contamination and pollution described herein. Their violation of this duty proximately caused the damages described below. Further, Defendants' actions violated their own company policies and industry practice and custom. Defendants' actions did not comply with the standards of conduct required in the contracts applicable to the subject property.

25.

Defendants that acquired other corporations or other legal entities by merger, acquisition, or otherwise, or who otherwise assumed obligations under applicable leases or contacts, had a duty to remedy the past wrongs of those parties for whose fault or obligations they are legally responsible.  To the extent that any defendant acquired the business or assets of a predecessor without a formal merger, said defendant is liable under the continuation doctrine of Louisiana law. In addition to their express or implied assumption of contractual obligations owed to Plaintiffs, Defendants are liable to Plaintiffs under the provisions of Section 324A of the Restatement 2d, as interpreted by Louisiana jurisprudence.  Under Section 324A, one or more of the Defendants assumed duties owed by others to the Plaintiffs to protect Plaintiffs and their Property from contamination and harm.

26.

Defendants are also guilty of a tort and a trespass.  Defendants' acts or omissions, and their unlawful conduct, have caused successive damages and cumulatively increasing deterioration of Plaintiffs' Property. The pollution caused by the Defendants have migrated and will migrate in the future.  The cause of the increasing damages to Plaintiffs' land is the failure of Defendants to remove their pollution from the Property.  The cause of the damages suffered by Plaintiffs thus give rise to successive damages.  In addition, Defendants' conduct and the associated discharge, disposal, or storage of chemical contaminants on Plaintiffs' Property have created an ongoing and damaging nuisance to Plaintiffs and Plaintiffs' Property.  Further, the presence of such contaminants on the Property constitutes a trespass.  The migration of waste is causing ever-increasing damage to Plaintiffs' Property, and such damage will exist until such time as these wastes are removed and remediated.

27.

Defendants are liable for the tortious breach of any leases, access agreements, or other contracts sued upon in this petition, and the tortious breach of any other contracts which obligate the Defendants to protect and preserve the Plaintiffs' property.

28.

Defendants are also liable to Plaintiffs under La. Civ. Code art. 667 of the Civil Code for damages caused by their handling, storage, discharge, and disposal of toxic and hazardous chemical contaminants on or adjacent to the Plaintiffs' property. La. Civ. Code art. 667 was amended by Act 1 of 1996, effective April 16, 1996. Defendants are "proprietors" within the meaning of La. Civ. Code art. 667, so said Defendants are strictly liable to Plaintiffs under La. Civ. Code art. 667 for damages sustained by the Plaintiffs before April 16, 1996. Plaintiffs' claims under Article 667 for damages occurring on or after April 16, 1996, are governed by the amended version of Civil Code article 667. To the extent that the Defendants held any rights in any leases or servitudes on the property (including any predial, legal, or personal servitudes), or owned the site itself, Plaintiffs and Defendants are co-proprietors of the property that owe obligations to each other under Article 667 of the Civil Code. Plaintiffs assert any personal, tort, or legal claims they may have under Article 667. Furthermore, Defendants are strictly liable to Plaintiffs under the provisions of La. Civ. Code articles 2317 and 2322. At all times pertinent hereto, Defendants had *garde* of the hazardous waste and materials that caused the pollution described herein. Those defendants who participated in the above described acts and/or omissions by merger and/or acquisition, had sufficient control to constitute *garde* under the provisions of La. Civ. Code art. 2317. Such ownership gives rise to a presumption of *garde*.

29.

Article 4 of the Mineral Code (R.S. 31:4) applies the Mineral Code to "subterranean waters." Article 10 of the Mineral Code (La. R.S. 31:10) provides in pertinent part that "[a] person with rights in a common reservoir or deposit of minerals may not make works, operate, or otherwise use his rights so as to deprive another intentionally or negligently of the liberty of enjoying his rights, or that may intentionally or negligently cause damage to him...." Plaintiffs are entitled to damages under the Mineral Code for the negligent exercise of Defendants' rights in using the subterranean waters of the property at issue as a waste dump.

30.

As a direct result of the above described acts and omissions of the Defendants, Plaintiffs have suffered damages to their Property occasioned by the nuisance created by Defendants. Plaintiffs have also sustained damages occasioned by the diminution in the value of their Property, including stigma damages. Further, in the alternative, and only if Plaintiffs have no other adequate remedy at law, Defendants are liable for unjust enrichment damages, as the Defendants have been unjustly enriched by their unauthorized use of Plaintiffs' lands to store and dispose of toxic and hazardous contamination. Plaintiffs claim all damages to which they are entitled under Louisiana law, including remediation damages, loss of property value, stigma damages, mental pain and anguish, inconvenience, fear and fright damages, and attorney fees under the Groundwater Act.

31.

Defendants' actions in knowingly disposing of toxic and hazardous materials onto Plaintiffs' Property, in failing to clean up said pollution and stop its further migration, in storing their pollution on Plaintiffs' properties, in allowing the migration of their pollution to offsite properties, in failing to properly maintain the property where these toxic and hazardous materials were transported, handled, stored and disposed of, and in egregiously violating applicable environmental, health, and safety regulations, constitute wanton and reckless disregard for public safety in the storage, handling, or transportation of hazardous or toxic substances. Defendants are therefore liable to Plaintiffs for punitive and exemplary damages. At all times pertinent hereto, Defendants had actual possession or control of the toxic and hazardous substances described above. With regard to Plaintiffs' tort claims that arise under the provisions of former Civil Code article 2315.3, Plaintiffs' claims for punitive damages are limited to acts and/or omissions of the Defendants (and/or their predecessors and/or successors) that occurred during the period of applicability of article 2315.3.

32.

Plaintiffs did not have actual or constructive knowledge of the pollution described herein until less than a year prior to the filing of this suit. Plaintiffs did not have actual or constructive knowledge of the Defendants' fault, negligence or violation or breach of contracts or other agreements until less than a year prior to the filing of this suit. Further, Defendants have engaged

in acts that effectually have prevented Plaintiffs from availing themselves of the causes of action alleged herein. These acts include fraud, ill practices, and misrepresentation intentionally committed by Defendants (or their representatives) designed to hinder, impede, or prevent plaintiff from asserting their causes of action to lull Plaintiffs into a false sense of security. Such acts of fraud, ill practices, and misrepresentation specifically include: (1) burying, hiding or actively concealing pollution; (2) failing to inform Plaintiffs or their predecessors that hazardous waste buried on the Property seeped or leaked; and (3) failing to inform the Plaintiffs or their predecessors that the activities of the Defendants would result in pollution and property damage. Due to Defendants' concealment of the hazardous and toxic contamination that they deposited on Plaintiffs' lands, and the role they played in causing the contamination, Plaintiffs and their predecessors were denied access to the knowledge and facts they needed to bring the claims alleged in this petition until less than a year before the present suit was filed.

33.

Further, for an undetermined length of time, the Defendants have stored toxic pollution and waste in the groundwaters and soils underlying the Plaintiffs' lands. Defendants have derived substantial economic benefits from this storage in that their use of the subsurface of the Plaintiffs' lands has allowed them to avoid the substantial costs and expenses associated with the proper disposal of this toxic pollution and waste. Thus, Plaintiffs are entitled to the civil fruits derived from Defendants' trespass, for La. Civ. Code art. 486 provides that a possessor in bad faith is liable for the "fruits he has gathered or their value subject to his claim for reimbursement of expenses."

34.

Plaintiffs are entitled to recover money damages equal to the cost to conduct a comprehensive and expedited environmental assessment of all present and yet unidentified pollution and contamination of their Property. Upon information and belief, no party made a defendant in this petition is a licensed remediation contractor. Thus, when this Court issues an injunction mandating compliance with applicable regulations and orders, Defendants will have to make "payments" to a licensed remediation contractor to comply with the injunction. Additionally, to the extent that Plaintiffs are prohibited from hiring their own contractor to perform the remedial

work, Plaintiffs are entitled to the recovery of any costs associated with overseeing the proper implementation of the cleanup.

35.

Defendants have not attempted to recover, handle, treat or dispose of any of the contamination at issue. It is expected that the Defendants will contend that natural attenuation is an acceptable method of remediating the contamination. The use of natural attenuation as a remediation method involves the storage of contamination at issue in the soils and groundwaters underlying the petitioners' respective properties for a period of time sufficient to allow natural processes to eliminate such contamination. Petitioners specifically allege that neither their respective properties, nor the groundwater can be feasibly remediated by means of natural attenuation. Thus, to the extent that natural attenuation is used, or will be used, as a remediation method to remediate the groundwater and/or the petitioners' respective properties, petitioners are entitled to reasonable compensation for the storage of waste on their respective properties, including rental or economic value of said storage.

36.

Natural attenuation is achieved when naturally occurring attenuation mechanisms, such as biodegradation, bring about a reduction in the total mass, toxicity, mobility, volume, or concentration of a contaminant dissolved in groundwater. Further, R. S. 30:2015.1(J)(2) defines remediation as follows:   "Evaluation and remediation" shall include but not be limited to investigation, testing, monitoring, *containment*, prevention, or abatement." The use of natural attenuation (monitored or otherwise) as a method of remediation is nothing more than the "containment" of the contamination at issue by means of its storage in the soils, sediment, and/or groundwater underlying the Plaintiffs' respective properties.   Petitioners aver that the contamination at issue cannot be removed by simply leaving it in the ground. Petitioners aver that a pump and treat method of remediation, and the other remediation methods, provide the most feasible and efficient means to remediate the usable groundwater at issue.  Under the public trust doctrine, petitioners, pursuant to the authority granted to them under La. R.S. 30:2015.1, are entitled to all damages necessary to preserve the public resources of the state. Usable groundwater is a public resource."

37.

To the extent that natural attenuation (monitored or otherwise) has been used, or will be used, as a remediation method to remediate usable groundwater, "all damages" for the storage of the contamination at issue in environmental media (water, soil, or sediment) underlying the petitioners' respective properties must be paid into the registry of the court pursuant to the provisions of La. R.S. 30:2015.1. Subsection E(1) of the Groundwater Act provides that: "Whether or not the Department of Environmental Quality becomes a party, and except as provided in Subsection I of this Section, all damages or payments in any civil action, including interest thereon, awarded for the evaluation and remediation of contamination or pollution that *impacts or threatens to impact* usable ground water shall be paid exclusively into the registry of the court as provided in this Section."[7]

38.

In order for monitored natural attenuation to be selected as a remedy, site-specific determinations have to be made to ensure that natural attenuation is sufficiently protective of human health and the environment. Many of these site-specific determinations have never been made in this case. Moreover, neither the vertical or horizontal extents of the contamination have ever been determined. Additionally, potential migration pathways should be considered when developing the conceptual model for the distribution of contaminants in the subsurface.

39.

Petitioners affirmatively allege that damages awarded by the court for remediation will be used to clean up the above described contamination. Petitioners have personal reasons for wishing to commit all sums awarded for remediation to clean up the affected properties.

40.

Each Defendant is liable to Plaintiffs *in solido.* The Defendants are joint tortfeasors.

**WHEREFORE,** Plaintiffs pray that the Defendants be cited to appear and answer this petition and that after due proceedings had, that there be judgment entered herein as follows:

---

[7] La. R. S. 30:2015.1(E)(1) (emphasis added).

(A)    Awarding Plaintiffs sufficient funds to conduct a complete environmental assessment of the extent and nature of the contamination of the Site; vertical and horizontal delineation of all contaminants of concern in any way related to the Defendants' acts or omissions associated therewith;

(B)    Awarding Plaintiffs all compensatory damages allowed by Louisiana law in an amount to be proven at trial, including payment of the costs to restore lands with identified pollution to its original unpolluted state, civil fruits resulting from Defendants' illegal and bad faith trespass on Plaintiffs' lands, storage damages, and other property damages, and damages for loss of use and lost profits and income; and, further, damages for land loss and subsidence;

(C)    Awarding Plaintiffs punitive and exemplary damages;

(D)    Ordering Defendants to pay Plaintiffs sufficient funds so that Plaintiffs may conduct a comprehensive and expedited environmental assessment of Plaintiffs' land and surrounding lands to identify all hidden or not yet identified pollution on and underneath said lands;

(E)    Awarding Plaintiffs all costs of this suit and for legal interest therein for any amount awarded from the date of judicial demand until paid; and further awarding Plaintiffs judicial interest on all contract claims from the date of breach; and further awarding attorneys' fees where appropriate under the provisions of applicable law;

(F)    Awarding the landowner Plaintiffs damages for diminution in property value before and after restoration, and stigma damages;

(G)    To the extent that Plaintiffs are prohibited from hiring their own contractor to perform the remedial work, awarding Plaintiffs any costs associated with overseeing the proper implementation of the cleanup;

(H)    Awarding attorney fees and expenses under the Groundwater Act;

(I)    For all just and equitable relief, and for all relief appropriate and reasonable under the premises;

(J)    Awarding damages or other relief allowable under Louisiana law under any of the causes of action alleged in this petition;

(K)    Alternatively, for all appropriate unjust enrichment damages as provided by Louisiana law; and

(L)    Plaintiffs further request a trial by jury over all matters.

Respectfully submitted,

TALBOT, CARMOUCHE & MARCELLO
17405 Perkins Road
Baton Rouge, LA 70810
Telephone: (225) 400-9991
Fax: (225) 448-2568

Donald T. Carmouche, #2226 (dcoffice@tcmlawfirm.net)
Victor L. Marcello, #9252 (vmarcello@tcmlawfirm.net)
John H. Carmouche, #22294 (jcarmouche@tcmlawfirm.net)
William R. Coenen, III, #27410 (wcoenen@tcmlawfirm.net)
Brian T. Carmouche, #30430 (bcarmouche@tcmlawfirm.net)
Todd J. Wimberley, #34862 (twimberley@tcmlawfirm.net)
Ross J. Donnes, #33098 (rdonnes@tcmlawfirm.net)
D. Adele Owen, #21001 (aowen@tcmlawfirm.net)
Leah C. Poole, #35092 (lpoole@tcmlawfirm.net)
Caroline H. Martin, #33308 (cmartin@tcmlawfirm.net)
Christopher D. Martin, #30613 (chrismartin@tcmlawfirm.net)
Michael L. Heaton, #38773 (mheaton@tcmlawfirm.net)

Pegram J. Mire, Jr., #9627
DUGAS & MIRE, LLC
1212-A East Worthy Street
Gonzales, LA 70737
Telephone: (225) 644-1255
Fax: (225) 644-6294

*Attorneys for Plaintiffs*

**PLEASE HOLD SERVICE**